```
            IN THE UNITED STATES DISTRICT COURT
           FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
```

DEBRA A. OLSEN,                  :
        Plaintiff
                                 :

        vs.                      :   CIVIL NO. 1:CV-09-0057

                                 :
GREGORY J. AMMONS,
MICHAEL HOPE,                    :
JAMES McNAUGHTON,
CAMP HILL BOROUGH,               :
LOU THIEBLEMONT,
        Defendants               :


*M E M O R A N D U M*

I.   *Introduction*

   Plaintiff, Debra A. Olsen, a police officer for Camp Hill Borough, filed this 42 U.S.C. § 1983 action alleging a First Amendment retaliation claim and a Fourteenth Amendment substantive due process claim. The suit arises from the Borough's unsuccessful attempt to return Olsen to a rotating work schedule as opposed to the fixed schedule she was working for years because of a health condition. The defendants are the Borough; Lou Thieblemont, Camp Hill's mayor; Gregory J. Ammons, Camp Hill's police chief; and Michael Hope and James McNaughton, Camp Hill police officers.

   We are considering the defendants' motion to dismiss Plaintiff's amended complaint under Fed. R. Civ. P. 12(b)(6).

II.  *Standard of Review*

In considering a motion to dismiss, we must accept as true the factual allegations in the complaint and construe any inferences to be drawn from the allegations in Plaintiff's favor. *See Morrison v. Madison Dearborn Capital Partners III L.P.*, 463 F.3d 312, 314 (3d Cir. 2006). The court is not limited to evaluating the complaint alone. It may consider documents that form the basis of a claim. *Lum v. Bank of Am.*, 361 F.3d 217, 221 n.3 (3d Cir. 2004). It may also consider "documents whose contents are alleged in the complaint and whose authenticity no party questions," even though they "are not physically attached to the pleading . . . ." *Pryor v. National Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002).

A complaint has to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974, 167 L.Ed.2d. 929 (2007). Detailed factual allegations are not required, *id*. at 570, 127 S.Ct. at 1964-65; *Pryor*, *supra,* 288 F.3d at 564, only a "short and plain statement" showing the right to relief. *Pryor*, *supra,* 288 F.3d at 564 (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) and quoting Fed. R. Civ. P. 8(a)(2)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, ___ U.S. ___

2

, ___, 129 S.Ct. 1937, 1949 (2009)(quoting *Twombly*, 550 U.S. at 556, 127 S.Ct. at 1965.) "[M]ore than labels and conclusions" are required. *Twombly,* 550 U.S. at 555, 127 S.Ct. at 1964-65.

III. *Background*

The amended complaint alleges the following. The Borough hired Plaintiff in or about January 1990. (Am. Compl. ¶ 10). She was hired over the objections of defendant Ammons, the chief of police, who did not want a female police officer in the Borough, fought against the plaintiff's hiring, and in response to that hiring, "exclaimed that no one tells him what or who runs his police department . . . ." (*Id.* ¶¶ 13 and 5). From the beginning of Plaintiff's employment, Defendants Ammons, McNaughton and Hope treated her in a hostile, demeaning and disrespectful way. (*Id.* ¶¶ 16 and 17). Ammons would frequently ridicule Plaintiff in front of her fellow officers. (*Id.* ¶ 18). McNaughton sexually harassed her on a number of occasions. (*Id.* ¶ 19). More specifically, in March 2008 Ammons and Hope harassed her over a Vehicle Code, a pager and a speed timing device. (*Id.*). In July 2008, McNaughton secretly disclosed to third parties that the Borough had a secret policy that the Police department would not back Plaintiff up in a dangerous situation. (*Id.*). In February 2008, Hope harassed Plaintiff over a misspelling in a report. (*Id.* ¶ 20). The defendants' unlawful conduct has been on a recurring basis for over ten years,

3

including the two years preceding the filing of the complaint. (*Id.* ¶ 21).

In or about February 1998, "the plaintiff suffered a debilitating seizure while performing her appointed duties as a police officer . . . ." (*Id.* ¶ 11). She suffered "serious injuries as a result of her collapse" following the seizure but was able to return to work within six months under an agreement with the Borough. (*Id.* ¶ 12).

Although not specified in the complaint, this agreement allowed Plaintiff to work a fixed schedule, and thereby avoid sleep deprivation, as Ammons and Thieblemont knew. (*Id.* ¶ 23). However, in or about October 2006, Ammons issued a memo which would have required Plaintiff to work beyond the end of her shift and to work a double shift. Plaintiff objected and after she contacted her doctor, he objected to her working a double shift. (*Id.* ¶ 22). Ammons admitted under oath either in the subsequent workers'-compensation hearing or the union-grievance proceedings that there was no pressing need to discontinue the agreement. (*Id.* ¶ 24).

Ammons and Thieblemont ordered Plaintiff to appear at a meeting where the memo was given to her. It read: "effective March 1, 2007, you will be returning to a rotating shift schedule." At the meeting, Plaintiff was also ordered to desk duty and not to drive an official car, but was permitted to use her own car for police business. (*Id.*). These decisions were not

4

based on medical information but were instead retaliatory for Plaintiff's invocation of the "ongoing 10 year agreement" and for contacting her doctor. (*Id.*).

At the October 2006, meeting, she was told, "We want a separate opinion," meaning an opinion from another doctor concerning her medical condition and the double shift. (*Id.* ¶ 25). The "directive" for another opinion was also in retaliation for Plaintiff's objecting to the changes in her working conditions and submitting her doctor's opinion. (*Id.*).

Plaintiff learned at the end of February 2007, she was going to be placed on rotating shifts in early March 2007, and she filed a written grievance with Ammons on February 28, 2007. On March 1, 2007, she was placed on rotating shifts, and Ammons denied the grievance. (*Id.* ¶ 28). "The arbitrator commented that the testimony of the defendant's expert was found to be '<u>not credible</u>' for a variety of obvious reasons.[1] Further, the Arbitrator had issued a January 16, 2007 decision where he found plaintiff fit for a return to regular duty," (*id.*),[2] but based on discovery in the arbitration, Ammons, Thieblemont and the Borough had issued orders before the expert issued his opinion indicating that the opinion was retaliatory. (*Id.*).

---

[1] This is a reference to an arbitrator's opinion and award after Plaintiff challenged Ammons' decision.

[2] The reference to the arbitrator's January 16 decision is mistaken. Based on the arbitrator's opinion, submitted by Plaintiff with her reply brief, that would be the decision of the Borough's medical expert on January 16 that Plaintiff could return to regular duty.

5

"When plaintiff went back on regular duty on March 1, 2007 she was kept on rotating shifts until the [union] arbitration decision came down on September 10, 2008." (*Id.* ¶ 29). The decision to put her on rotating shifts was wrongful for the following reasons. First, Dr. Yanofsky, Plaintiff's doctor, "inform[ed] the defendants . . . that his main concern . . . was sleep deprivation and that shift change was an invitation to tempt fate." (*Id.* ¶ 30). Second, it was in retaliation for: (a) Plaintiff's objecting "to being placed on the DUI nighttime checkpoint duty and assigned a double shift . . . ." (*id.*, ¶ 31); and (b) Plaintiff, her doctor and her union "effectively assert[ing] her legal rights in legal proceedings to preserve her health and her employment." (*Id.* ¶ 32).

Plaintiff also avers that the defendants' decision to place her on rotating shifts was "intentionally designed to injure her, the defendants being constructively informed of her medical status as a matter of law and fact no later than March 25, 2007." (*Id.* ¶ 35). In support, she avers that on March 25, 2007, defendants were constructively advised of a workers'-compensation decision denying the Borough's petition to terminate the agreement. That decision sided with Dr. Yanofsky, rather than Dr. Winkelman, the defendant's doctor, on Plaintiff's need to avoid rotating shifts. The union also pointed this out on April 3, 2007. (*Id.* ¶¶ 36 and 37). "Thus no later than April 3, 2007 the defendants knew that their forcing

6

the plaintiff to suffer fear, anxiety, and extreme pain and suffering, for fear of her life and health, in retaliation for her victory in her successful struggle against the defendants' Worker's Compensation Termination Petition and because she filed a grievance against her unlawful mistreatment, was unlawful and wrong." (*Id.* ¶ 39). Plaintiff avers that "[e]very day that plaintiff was forced to work rotating shifts from March 7, 2007 until September 10, 2007 was a separate injury and act of retaliation against the plaintiff for the exercise of her rights as protected by the First Amendment."

Under a section of her amended complaint entitled, "Rights Violated," Plaintiff sets forth a First Amendment retaliation claim contending that the defendants violated her right to petition the government for redress of grievances. She also sets forth a claim under the Fourteenth Amendment contending that the Amendment protects her from "retaliation" for "availing herself of her right and opportunity to protect her health against life threatening actions by the . . . defendants intentionally seeking to harm her because of the exercise of that right." (*Id.* ¶¶ 8-9). The latter claim appears to be a substantive due process claim because Plaintiff alleges that the defendants' conduct "shocks the conscience" in that they "knew they were negatively affecting plaintiff's health and endangering her life no later than April 3, 2007 at the latest, yet in violation of plaintiff's substantive due process rights

they intentionally continued her on rotating shifts for no purpose other than to intimidate and harass her." (*Id.* ¶ 45). Plaintiff seeks compensatory damages against all defendants as well as punitive damages against the individual defendants.

IV.   *Discussion*

In order to prove First Amendment retaliation, a plaintiff must show: "(1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person or ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." *Thomas v. Independence Twp.*, 463 F.3d 285, 296 (3d Cir. 2006); *See also Eichenlaub v. Twp. of Indiana*, 385 F.3d 274, 282 (3d Cir. 2004).

The defendants have moved to dismiss the First Amendment retaliation claim, in part, on the ground that any constitutionally protected activity did not take place before the supposed retaliatory action and that therefore the defendants could not have retaliated against her for the exercise of her First Amendment rights. We agree.

As the allegations of the amended complaint show, the events giving rise to the complaint began in October 2006, when Police Chief Ammons issued a memo which would have required Plaintiff to work beyond the end of her shift and to work a

double shift.³ It was at this point that Plaintiff objected and began the process of contesting this change in her work schedule, including contacting her doctor, who objected to her working a double shift. Hence Plaintiff fails to satisfy the second element of a retaliation claim in that Defendant's conduct occurred before any alleged constitutionally protected activity and thus cannot be said to be in retaliation for that conduct. In this regard, we reject Plaintiff's contention that every day she was forced to work rotating shifts from March 7, 2007, until September 10, 2007, constituted a separate injury and act of retaliation.

Further, the workers'-compensation proceedings cannot as a matter of law be protected activity as those proceedings were initiated by the Borough by way of a termination petition. Since Plaintiff was the responding party in those proceedings, her right to petition was not implicated. *See Hannan v. City of Philadelphia*, 306 Fed. Appx. 735, 738 (3d Cir. 2009)

---

³ Based on the arbitrator's decision on the union grievance, the Borough believed that after about ten years following her first and only seizure, Plaintiff could be placed back on a regular rotation. They had the opinion of their own medical expert to back this up. (Doc. 16-2, CM/ECF pp. 3-4). We add that the arbitrator's opinion also set forth the terms of the agreement as requiring only "reasonable efforts" . . . to accommodate" the plaintiff "in the avoidance of frequent rotating shifts." (*Id.* p. 3). Further, contrary to paragraph 42 of Plaintiff's amended complaint that the arbitrator had found that the Borough had no "pressing need" to return Plaintiff to a rotating shift, the cited portion of the arbitrator's opinion was merely summarizing the union's position. (Doc. 16-2, p. 6). The Borough's position, characterized as a "forceful argument" by the arbitrator, was that the police force had shrunk to nine members and hence was "hampered" by having one officer "work a steady single shift." (*Id.* p. 22).

(nonprecedential) (police officer's required response to disciplinary charge was not invocation of First Amendment right to petition the government) (citing *Foraker v. Chaffinch*, 501 F.3d 231, 238 (3d Cir. 2007)).[4]

Plaintiff points out in her brief in opposition to the motion to dismiss that the defendants did not address an equal protection claim based on sexual harassment and a separate constitutional claim for a hostile and abusive work environment. Plaintiff cites *Robinson v. City of Pittsburgh*, 120 F.3d 1286 (3d Cir. 1997), in support of the first claim, and *Brennan v. Norton*, 350 F.3d 399 (3d Cir. 2003), in support of the second one.

It is understandable that the defendants did not address these claims, for Plaintiff specifically set forth in a separate section of her amended complaint that she was making only two claims: a First Amendment retaliation claim and, more obliquely, a substantive due process claim (which appears to be the same as the constitutional claim for a hostile and abusive work environment).

In the interest of judicial economy, we will give the defendants an opportunity to file a motion to dismiss the equal protection claim based on sexual harassment and the constitutional claim for a hostile and abusive work environment.

---

[4] Plaintiff attached the workers'-compensation decision to her opposition brief as Exhibit B (doc. 16-4).

The defendants may file such a motion within twenty days, accompanied by a supporting brief. Thereafter, briefing shall be in accord with the local rules for pretrial motions. Alternatively, the defendants may file an answer.

We will issue an appropriate order.

/s/William W. Caldwell
William W. Caldwell
United States District Judge

Date: August 6, 2009

```
            IN THE UNITED STATES DISTRICT COURT
           FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


DEBRA A. OLSEN,                     :
        Plaintiff
                                    :

        vs.                         :    CIVIL NO. 1:CV-09-0057

                                    :
GREGORY J. AMMONS,
MICHAEL HOPE,                       :
JAMES McNAUGHTON,
CAMP HILL BOROUGH,                  :
LOU THIEBLEMONT,
        Defendants                  :
```

*O R D E R*

AND NOW, this 6th day of August, 2009, upon consideration of the motion to dismiss the amended complaint, it is ordered that:

    1. The First Amendment retaliation claim is dismissed.

    2. The defendants shall have twenty days from the date of this order to file a motion to dismiss the equal protection claim based on sexual harassment and the constitutional claim for a hostile and abusive work environment. The motion shall be accompanied by a supporting brief. Thereafter, briefing shall be in accord with the local rules for pretrial motions. Alternatively, the defendants may file an answer to the amended complaint.

                                        /s/William W. Caldwell
                                        William W. Caldwell
                                        United States District Judge