IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DEBRA A. OLSEN, :
      Plaintiff
:

vs. : CIVIL NO. 1:CV-09-0057

:
GREGORY J. AMMONS,
MICHAEL HOPE, :
JAMES McNAUGHTON,
CAMP HILL BOROUGH, :
LOU THIEBLEMONT,
      Defendants :

*M E M O R A N D U M*

I.    *Introduction*

      Plaintiff, Debra A. Olsen, a police officer for Camp Hill Borough, filed this 42 U.S.C. § 1983 action alleging in an amended complaint a First Amendment retaliation claim and a Fourteenth Amendment substantive due process claim. The suit arises in part from the Borough's unsuccessful attempt to return Olsen to a rotating work schedule as opposed to the fixed schedule she had been working for years because of a health condition. The defendants are: the Borough; Lou Thieblemont, Camp Hill's mayor; Gregory J. Ammons, Camp Hill's police chief; and Michael Hope and James McNaughton, Camp Hill police officers.

      Defendants filed a motion to dismiss the retaliation claim, which we granted. *See* 2009 WL 2426060, at *4 (M.D. Pa. Aug. 6, 2009). In opposing Defendants' motion, Plaintiff pointed out that her amended complaint also alleged a constitutional claim for a hostile work environment and that the allegations supported an equal-protection claim based on sexual harassment. We agreed, but because those claims had not been made

clear in the complaint, in the interest of judicial economy, we allowed the defendants to file another motion to dismiss.

Defendants did so and we are considering that second motion, which argues that the amended complaint fails to set forth sufficient allegations to support those claims.

II.     *Standard of Review*

Fed. R. Civ. P. 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." Under Rule 12(b)(6), we must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008)). While a complaint need only contain "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), and detailed factual allegations are not required, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964, 167 L.Ed.2d. 929 (2007), a complaint has to plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570, 127 S.Ct. 1955 at 1974. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, __ U.S. __, __, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009)(quoting *Twombly*, 550 U.S. at 556, 127 S.Ct. at 1965.) "[L]abels and conclusions" are not enough, *Twombly,* 550 U.S. at 555, 127 S.Ct. at 1964-65, and a court "'is not bound to accept as true a legal conclusion couched as a factual allegation.'" *Id.*, 127 S.Ct. at 1965 (quoted case omitted).

2

In resolving the motion to dismiss, we thus "conduct a two-part analysis." *Fowler*, *supra*, 578 F.3d at 210. First, we separate the factual elements from the legal elements and disregard the legal conclusions. *Id.* at 210-11. Second, we "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a '"plausible claim for relief."'" *Id.* at 211 (quoted case omitted).

III.     *Background*

The amended complaint alleges the following.[1]  The Borough hired Plaintiff in or about January 1990. (Am. Compl. ¶ 10). She was hired over the objections of defendant Ammons, the chief of police, who did not want a female police officer in the Borough, fought against the plaintiff's hiring, and in response to that hiring, "exclaimed that no one tells him what or who runs his police department . . . ." (*Id.* ¶¶ 13 and 5).

From the beginning of Plaintiff's employment, Defendant Ammons "consistently and persistently" treated her in "an openly hostile, demeaning and disrespectful way." (*Id.* ¶ 16). McNaughton and Hope treated her "in a similar demeaning, disrespectful, and hostile manner." (*Id.* ¶ 17). "Ammons frequently waited for opportunities when . . . members of the Police Department were present at common meetings . . . to ridicule the plaintiff" and "intentionally created a contentious, harassing situation at plaintiff's work site having no reason to do so." (*Id.* ¶ 18). More specifically, in March 2008 Ammons and Hope harassed her "over a Vehicle Code, a pager and a speed timing device." (*Id.*).

McNaughton "harassed the plaintiff, particularly engaging in misconduct of a sexual harassment nature . . . ." (*Id.* ¶ 19). In July 2008, McNaughton "disclosed to

---

[1] For the most part, this background section comes from the background section in our August 6 memorandum.

third parties . . . that the Borough had in effect a secret policy that they (the Police Department) would not back the plaintiff up should she need backup in a dangerous situation. Plaintiff was never advised of this unlawful retaliatory policy by McNaughton, the Chief, and the Borough." (*Id.*). Hope "has also acted to openly insult, attempt to intimidate, and interfere with plaintiff's performance of her duties." (*Id.* ¶ 20). "For just one example" of Hope's conduct, in February 2008, "Hope intentionally harassed the plaintiff over a misspelling in a report . . . ." (*Id.*). Thieblemont was part of this unlawful conduct. (*Id.*).

The defendants' unlawful conduct has been on a recurring basis for over ten years, including the two years preceding the filing of the complaint. (*Id.* ¶ 21).

In or about February 1998, "the plaintiff suffered a debilitating seizure while performing her appointed duties as a police officer . . . ." (*Id.* ¶ 11). She suffered "serious injuries as a result of her collapse" following the seizure but was able to return to work within six months under an agreement with the Borough. (*Id.* ¶ 12).

Although not specified in the complaint, this agreement allowed Plaintiff to work a fixed schedule. (*Id.* ¶ 22). However, in or about October 2006, Ammons issued a memo which would have required Plaintiff to work beyond the end of her shift and to work a double shift. Plaintiff objected and after she contacted her doctor, he objected to her working a double shift. (*Id.* ¶ 22(a)). Ammons admitted under oath either in the subsequent workers'- compensation hearing or the union-grievance proceedings that there was no pressing need to discontinue the agreement. (*Id.* ¶ 24).

Ammons and Thieblemont ordered Plaintiff to appear at a meeting where the memo was given to her. (*Id.* ¶ 22(b)). It read: "effective March 1, 2007, you will be returning to a rotating shift schedule." (*Id.* ¶ 22(c)). At the meeting, Plaintiff was also ordered to desk duty and not to drive an official car, but was permitted to use her own car

for police business.  (*Id.* ¶ 22(d)).  These decisions were not based on medical information but were instead retaliatory for Plaintiff's invocation of the "ongoing 10 year agreement" and for contacting her doctor.  (*Id.* ¶ 22(e))).

At the October 2006, meeting, she was told, "We want a separate opinion," meaning an opinion from another doctor concerning her medical condition and the double shift.  (*Id.* ¶ 25).  The "directive" for another opinion was also in retaliation for Plaintiff's objecting to the changes in her working conditions and submitting her doctor's opinion.  (*Id.*).

Plaintiff learned at the end of February 2007, she was going to be placed on rotating shifts in early March 2007, and she filed a written grievance with Ammons on February 28, 2007.  On March 1, 2007, she was placed on rotating shifts, and Ammons denied the grievance.  (*Id.* ¶ 28).  "The arbitrator commented that the testimony of the defendant's expert was found to be *'not credible*' for a variety of obvious reasons."[2] (*Id.*)(emphasis in original).  Further, the Arbitrator had issued a January 16, 2007 decision where he found plaintiff fit for a return to regular duty," (*id.*),[3] but based on discovery in the arbitration, Ammons, Thieblemont and the Borough had issued orders before the expert issued his opinion, thus indicating that the opinion was retaliatory.  (*Id.*).

"When plaintiff went back on regular duty on March 1, 2007 she was kept on rotating shifts until the [union] arbitration decision came down on September 10, 2008." (*Id.* ¶ 29).  The decision to put her on rotating shifts was wrongful for the following reasons.  First, Dr. Yanofsky, Plaintiff's doctor, "inform[ed] the defendants . . . that his

---

[2] This is a reference to an arbitrator's opinion and award after Plaintiff challenged Ammons' decision.

[3] The reference to the arbitrator's January 16 decision is mistaken. Based on the arbitrator's opinion, submitted by Plaintiff with her reply brief, that decision would be the decision of the Borough's medical expert on January 16, not that of the arbitrator, that Plaintiff could return to regular duty.

main concern . . . was sleep deprivation and that shift change was an invitation to tempt fate." (*Id.* ¶ 30). Second, it was in retaliation for: (a) Plaintiff's objection "to being placed on the DUI nighttime checkpoint duty and assigned a double shift . . . ." (*id.,* ¶ 31); and (b) the fact that Plaintiff, her doctor and her union had "effectively asserted her legal rights in legal proceedings to preserve her health and her employment." (*Id.* ¶ 32).

Plaintiff also avers that the defendants' decision to place her on rotating shifts was "intentionally designed to injure her, the defendants being constructively informed of her medical status as a matter of law and fact no later than March 25, 2007." (*Id.* ¶ 35). In support, she avers that on March 25, 2007, defendants "were constructively advised" of a workers'- compensation decision denying the Borough's petition to terminate the agreement. That decision sided with Dr. Yanofsky, rather than Dr. Winkelman, the defendant's doctor, on Plaintiff's need to avoid rotating shifts. The union also pointed this out on April 3, 2007. (*Id.* ¶¶ 36 and 37). "Thus no later than April 3, 2007 the defendants knew that their forcing the plaintiff to suffer fear, anxiety, and extreme pain and suffering, for fear of her life and health, in retaliation for her victory in her successful struggle against the defendants' Worker's Compensation Termination Petition and because she filed a grievance against her unlawful mistreatment, was unlawful and wrong." (*Id.* ¶ 39). Plaintiff avers that "[e]very day that plaintiff was forced to work rotating shifts from March 7, 2007 until September 10, 2007 was a separate injury and act of retaliation against the plaintiff for the exercise of her rights as protected by the First Amendment." (*Id.* ¶ 44). It was also conduct that "shocks the conscience" and intended "for no other purpose than to intimidate and harass her." (*Id.* ¶ 45).

6

IV.     *Discussion*

As noted, in opposing the motion to dismiss the amended complaint, Plaintiff asserted she had made two claims that had gone unaddressed in that motion, a constitutional claim (presumably based on substantive due process) for a hostile work environment and a Fourteenth Amendment equal-protection claim based on sexual harassment.  In opposing the second motion to dismiss, Plaintiff has briefed only the equal-protection claim.  We thus conclude that she has abandoned any due-process claim, and will address only the validity of her equal-protection claim.

Plaintiff's allegations establish that her equal-protection claim is based on a hostile work environment.  A plaintiff can assert an equal-protection claim under 42 U.S.C. § 1983 for a hostile work environment.  *Pollock v. City of Philadelphia*, No. 06-4089, 2008 WL 3457043, at *8 (E.D. Pa. Aug. 8, 2008)(collecting cases).  The test for an equal-protection hostile-work-environment claim is the same one used for a Title VII claim.  *Id.* at *9 (collecting cases).

As stated in *Pollock*, and adapting the test for gender discrimination, in order to prove a gender-discrimination equal-protection claim arising from a hostile work environment, a plaintiff must show: (1) that she suffered intentional discrimination because of her gender; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same gender in that position; and (5) a basis for personal liability.  *Id.* at *8.[4]  There is a significant difference from a Title VII

---

[4] As the court in *Pollock* observed, 2008 WL 3457043, at *8 n.3, the "severe or pervasive" language in the third element comes from the Third Circuit's recognition in *Jensen v. Potter*, 435 F.3d 444, 449 n.3 (3d Cir. 2006), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006), that its previous formulation, "pervasive and regular," was not in accord with Supreme Court case law, which uses the disjunctive "severe or pervasive."  The fifth element also differs from the Title VII test, which requires a basis for respondeat superior liability, since there is no such liability in a section 1983 claim.  *Pollock*, 2008 WL 3457043, at *8 n.4.

7

case -- a section 1983 claim requires a plaintiff to also show the defendant acted under color of state law. *Bonenberger v. Plymouth Twp.*, 132 F.3d 20, 23 (3d Cir. 1997)(in a section 1983 equal-protection case alleging sexual harassment "state action is a threshold issue").

In moving to dismiss the equal-protection claim, the defendants make the following arguments. First, none of the allegations gives rise to an inference that any of the defendants' alleged conduct was gender-based animosity, as the Equal Protection Clause requires. At most, the allegations indicate personal animosity, which is insufficient. As to the averment that Chief Ammons stated in January 1990 that he did not want a female police officer in the Borough, since Plaintiff was nonetheless hired at that time, the defendants argue the statement has no bearing on Plaintiff's current claim of sexual harassment.

Second, the allegations fail to meet Rule 12(b)(6)'s requirement that sufficient facts be pled to show that a claim exists because they are all conclusory except for the following three: (1) in March 2008 Ammons and Hope harassed Plaintiff "over a Vehicle Code, a pager and a speed timing device," (Am. Compl. ¶ 18); (2) McNaughton secretly disclosed to third parties that the Borough had a secret policy that the Police Department would not back Plaintiff up in a dangerous situation, a policy Plaintiff was never told about, (Am. Compl. ¶ 19); and (3) in February 2008, "Hope intentionally harassed the plaintiff over a misspelling in a report" and Thieblemont was part of this unlawful conduct, (Am. Compl. ¶ 20). The defendants maintain these three allegations represent at most isolated incidents of harassment which are insufficient for a claim of a hostile work environment.

In opposition, Plaintiff makes three arguments. First, quoting *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)(footnote omitted), her

8

amended complaint cannot be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief." Second, contrary to Defendants' argument, her allegations are sufficiently factual to survive a motion to dismiss. Third, under *Alston v. Parker*, 363 F.3d 229, 233 n.6 (3d Cir. 2004), "a plaintiff need not plead facts" to survive a motion to dismiss because the defendants can obtain the necessary facts during discovery. And *Alston* also stressed that because civil rights plaintiffs often lack information about persons relevant to their claim, in civil rights cases "the need for discovery is 'particularly acute.'" *Id.*

We first address Plaintiff's first and third arguments, those dealing with the pleading standard we should employ and Plaintiff's belief that a plaintiff need not be that specific because a defendant always has resort to discovery to flesh out the claim against him.

Plaintiff's reliance on *Conley* is misplaced. Well over two years ago, in *Twombly*, *supra*, 550 U.S. at 562-63, 127 S.Ct. at 1969, the Supreme Court stated that *Conley*'s "no set of facts" language no longer had a place in resolving Rule 12(b)(6) motions. For that reason, *Alston*'s statement, made before *Twombly* was decided, that "a plaintiff need not plead facts" to survive a motion to dismiss is no longer good law.[5]

In regard to discovery, *Alston*'s statement that discovery may sometimes be needed may still be valid, but does not apply here. In *Alston*, the court said prisoners pursuing civil rights actions may need discovery because they "may be unaware of the identities and roles of relevant actors and, owing to their incarceration or institutionalization, unable to conduct a pre-trial investigation to fill in the gaps." 363 F.3d at 233 n.6. In contrast, Plaintiff is not a prisoner (and also has counsel) and is in a

---

[5] We must follow the Third Circuit, of course, but not when an intervening Supreme Court case indicates otherwise. *See In re Wiggins*, 341 B.R. 506, 512 (M.D. Pa. 2006) (Caldwell, J.).

9

position to know who the relevant actors are, and because of the nature of her claim, what their conduct was.

We turn now to an analysis of Plaintiff's amended complaint under *Twombly*, *supra*. In doing so, we conclude that the complaint fails to state a claim against any defendant. We treat each defendant separately.

We begin with the Borough. The only claim against the Borough is that, according to McNaughton's statements to "third parties," the Borough had "a secret policy," that Plaintiff would not receive backup in a dangerous situation, should she ever need it. (Am. Compl. ¶ 19). Plaintiff alleges she "was never advised of this unlawful retaliatory policy . . . ." (*Id.*).

These allegations fail to state a claim against the Borough. To begin with, the policy is alleged to be retaliatory, which appears to make it part of Plaintiff's retaliation claim, a claim we already dismissed on August 6, 2009. *See* 2009 WL 2426060, at \*4. In any event, even if the policy were gender-based, it fails to state a claim.

We agree with Plaintiff that refusing to provide a fellow police officer with backup because of gender would support a hostile work environment claim because it would indicate severe or pervasive gender discrimination. *See Zelinski v. Pennsylvania State Police*, 108 Fed. Appx. 700, 704 (3d Cir. 2004) (nonprecedential)(failure to provide protection during an undercover drug operation could be evidence of severe and pervasive sexual discrimination); *Hartley v. Pocono Mountain Regional Police Dep't*, No. 04-2045, 2007 WL 906180, at \*4 (M.D. Pa. Mar. 22, 2007)(evidence that certain male officers failed to provide backup for the plaintiff was evidence of severe or pervasive sexual harassment, citing *Zelinski*). *See also Semsroth v. City of Wichita*, 304 Fed. Appx. 707, 726 (10th Cir. 2008)(nonprecedential) (failure of supervisors to discipline a police officer who refused to provide backup is evidence of gender discrimination,

10

observing that the failure to back up the plaintiff put her in physical danger); *Jemmott v. Coughlin*, 85 F.3d 61, 67 (2d Cir. 1996) (refusal to provide backup to the plaintiff prison guard supported a hostile work environment claim based on race); *Barth v. Village of Mokena*, No. 03-6677, 2006 WL 862673, at \*21 (N.D. Ill. Mar. 31, 2006) (failure to provide police backup to female officer, even as an isolated occurrence, sufficiently severe or pervasive); *Kramarski v. Village of Orland Park*, No. 00-2487, 2002 WL 1827637, at \*9 (N.D. Ill. Aug. 9, 2002)(denying plaintiff backup and blocking her radio transmissions were sufficiently pervasive to create a hostile environment). Even threatening a plaintiff police officer with denial of backup supports a hostile work environment claim. *See Collins v. Village of Woodridge*, 96 F. Supp. 2d 744, 750 (N.D. Ill. 2000)(commanding officer's statement to plaintiff essentially indicating that fellow officers would not back her up early in her employment supported hostile work environment claim).

      The problem for Plaintiff is that, unlike the cited cases, she does not allege she was in fact denied backup, only that there was a policy to deny her backup; additionally, the policy was secret, so she was never threatened with being denied backup. Further, because Plaintiff did not know the policy was in effect, the claim fails the third element of a hostile work environment claim, that the discrimination detrimentally affected her. The conduct is certainly "objectively" offensive, as required by the fourth element of such a claim, but the third element requires that the conduct be "'subjectively offensive . . . one that the victim did in fact perceive to be so.'" *Pollock, supra*, 2008 WL 3457043, at \*8 (quoted case omitted). *See Spain v. Gallegos*, 26 F.3d 439, 447 (3d Cir. 1994)(the fourth element is an objective standard and the third element is a subjective one). Plaintiff could not have perceived the policy to be offensive if she did not know about it. Hence the claim against the Borough must be dismissed.

11

We turn now to the allegations against Hope and McNaughton, Plaintiff's fellow police officers. Plaintiff fails to state a claim against these defendants for two reasons. First, there are no allegations that they acted under color of state law, as required for a section 1983 claim. *Bonenberger*, *supra*, 132 F.3d at 23. Plaintiff does allege that these defendants committed acts of sexual discrimination, but not "all acts of an on-duty state employee are state action for purposes of section 1983." *Id.* at 24. The defendant must have "abused a power or position granted by the state." *Id.* Hence, when a female law enforcement officer fails to establish that the defendant law enforcement officer was in a "supervisory position" over her, she has no section 1983 claim, even if there is evidence of sexual harassment on his part. *Zelinski*, *supra*, 108 Fed. Appx. at 703. Here, defendants Hope and McNaughton appear to be Plaintiff's co-workers. There are no allegations that either of them was in a supervisory position over Plaintiff at the time the alleged sexual harassment occurred.

The second defect, as the defendants argue, is in the overall conclusional nature of the allegations of gender discrimination. As the defendants point out, there are only two specific allegations against Hope. In March 2008 he and Ammons harassed Plaintiff "over a Vehicle Code, a pager and a speed timing device," (Am. Compl. ¶ 18), and in February 2008, "Hope intentionally harassed the plaintiff over a misspelling in a report" (Am. Compl. ¶ 20). There is only one specific allegation against McNaughton, that he secretly disclosed to third parties the Borough's secret policy not to back Plaintiff up in a dangerous situation. (Am. Compl. ¶ 19). These specific incidents are not severe or pervasive. They represent only isolated incidents of harassment that are insufficient to support a hostile work environment claim. As stated in *Jensen*, *supra*, only "severe or pervasive harassment" is forbidden. "Occasional insults, teasing, or episodic instances of ridicule are not enough; they do not 'permeate' the workplace and change the very nature

of the plaintiff's employment." 435 F.3d at 451. And in McNaughton's case there is not even an allegation of harassment, as he is only alleged to have disclosed to third parties the Borough's policy concerning backup.

There are other allegations against these defendants, allegations that they regularly harassed Plaintiff based on her gender, but they are conclusional and do not provide sufficient facts showing that Plaintiff has a plausible claim to relief.

As to defendant Ammons, the chief of police, Plaintiff's claim against him suffers from the same pleading defects (aside from the state action requirement since the chief would be in a supervisory position over Plaintiff). The only specific allegation against Ammons is that in March 2008 he and Hope harassed Plaintiff over a Vehicle Code, a pager and a speed timing device. The rest of the allegations against him are conclusional. Plaintiff thus fails to state claim against Ammons.

The pleading against defendant Thieblemont, the mayor of Camp Hill, is even weaker. There are not even any conclusory allegations of regular harassment by him, and the only specific allegation is that he "was part" of Hope's conduct in February 2008 when Hope harassed Plaintiff over a misspelling in a report.[6]

The only issue left is whether to allow amendment. *See Alston*, *supra*, 363 F.3d at 235 (the district court must permit leave to amend unless an amendment would be inequitable or futile"). Defendants had filed a motion to dismiss the original complaint, and the amended complaint was Plaintiff's response to their argument that the original pleading was vague and conclusory. We therefore conclude that any amendment would be futile and leave to amend will not be granted.

---

[6] We add that Plaintiff cannot rely on the allegations making up her retaliation claim as it is alleged in that claim that the defendants' conduct was retaliatory for the exercise of her First Amendment rights, not based on gender.

13

We will issue an appropriate order.

/s/William W. Caldwell
William W. Caldwell
United States District Judge

Date: December 1, 2009

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DEBRA A. OLSEN, :
    Plaintiff
                                                   :

    vs. : CIVIL NO. 1:CV-09-0057

                                                   :
GREGORY J. AMMONS,
MICHAEL HOPE, :
JAMES McNAUGHTON,
CAMP HILL BOROUGH, :
LOU THIEBLEMONT,
    Defendants :

## *O R D E R*

    AND NOW, this 1st day of December, 2009, it is ordered that:

    1. Defendants' Second Motion to Dismiss Plaintiff's Amended Complaint (doc. 19) is granted.

    2. The Amended Complaint is hereby dismissed.

    3. The Clerk of Court shall close this file.


                                               /s/William W. Caldwell
                                             William W. Caldwell
                                             United States District Judge